Argued September 12, affirmed September 28, 1972

BOYCE, *Respondent, v.* STANDARD
INVESTMENT COMPANY ᴇᴛ ᴀʟ, *Appellants.*

501 P2d 65

*William S. McDonald,* Portland, argued the cause for appellant.

*Gerald Pullen,* Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN,* TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action by a realtor to enforce payment of a commission for the sale of real property. Plain-

---

\* Holman, J., did not participate in this decision.

tiff, the realtor, alleged that he produced a purchaser ready, willing and able to purchase the property and that an earnest money agreement was signed by both parties, but that the sale was not completed because of the failure of defendant, as the owner, to close the transaction. The case was tried before the court, without a jury. Defendant appeals from a judgment in favor of plaintiff for $4,860, the amount of the commission. We affirm.

Defendant's assignments of error are as follows:

1. "The court erroneously found a meeting of the minds between Mattsons and Standard Investment Co."

2. "The evidence does not show that Mattsons were at all times willing to buy the property of Standard Investment."

3. "The court should have granted defendant's motion for an involuntary nonsuit."

4. "The court could not as a matter of law find that Standard Investment had a reasonable time after December 15, 1969 to complete the closing, which time was 30 days."

■ These assignments of error do not satisfy the requirements of Rule 2.35, Rules of Procedure, Supreme Court of Oregon. Because, however, they all raise questions relating to the sufficiency of the evidence to support the findings of fact, conclusions of law and judgment of the trial court, we shall consider that question, bearing in mind that because this is an action at law, the findings of fact by the trial court must be affirmed if supported by any competent substantial evidence. ORS 17.435; *Anaheim Co. v. Holcombe,* 246 Or 541, 548, 426 P2d 743 (1967).

Both parties agree that the law of this case is controlled by the rule as approved in *Setser v. Com-*

*monwealth, Inc.,* 256 Or 11, 21, 470 P2d 142 (1970), as follows:

"" "* * * When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his, * * * there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, in the absence of default by the seller, the broker's right to commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale.' "

On December 4, 1969 the parties entered into and signed a written earnest money agreement for the sale of defendant's apartments to one David Mattson and wife for $162,000 on a standard printed form as prepared by Argus Real Estate, which represented defendant as its broker. That agreement also provided, among other things, that "[s]eller has the right to refinance—not to exceed terms in contract" and that "[p]ossession of said premises is to be delivered to purchaser on or before 12-15, 1969." The commission on this sale was to be divided between plaintiff, as broker for the buyer, and Argus Real Estate.

One of the primary incentives for Mr. Mattson and his wife to enter into the transaction was that they desired the benefit, for income tax purposes for the

year 1969, of terms under which $4,000 of the $15,000 down payment was specified as "prepaid interest."

While defendant may be correct in contending that Mattson's motive may not have been disclosed directly to defendant and may have little or no importance in this case, there was evidence that plaintiff, as Mattson's agent, and Mr. Rask of Argus Realty, as defendant's agent, had an understanding that the transaction had to be closed before the end of the year for tax purposes, and that plaintiff repeatedly urged Rask to expedite the closing of the transaction.

Meanwhile, a written contract was prepared by Security Escrows on a printed form supplied by defendant. That contract was signed by Mattson and his wife, dated December 15, 1969 and placed in escrow, together with the full amount of the down payment. It is undisputed that nothing further remained to be done by Mattson as the buyer. Mattson also went to the apartments and introduced himself to the manager as the new owner.

A Mr. Perry, manager of Security Escrows, and who acted under written escrow instructions from both parties to the transaction, testified that the reference in the earnest money agreement to December 15, 1969 as the date to deliver possession meant to him, as "an escrow man, * * * that on an income property, it's got to be closed by that date." He also testified, as did plaintiff, that it was his understanding that this transaction was to be "consummated" by that date. Mattson, plaintiff and Mr. Perry also testified that during the entire transaction Mr. Mattson was at all times ready, willing and able to go through with the deal.

Plaintiff also testified that although Mr. Rask of

Argus Realty "kept saying that they were going to be in to sign," and that although defendant never directly stated that it would not do so, it never did sign this contract and close the transaction. Mr. Perry, the escrow agent, testified that he also received no explanation why defendant did not sign the final contract other than that he was told by Mr. Rask of Argus Realty that defendant was "trying to obtain financing."

■ After reviewing the entire record we hold that there was ample evidence to support the findings of fact by the trial court to the effect that the requirements of *Setser v. Commonwealth, Inc., supra,* were satisfied in this case and that plaintiff was entitled to payment of a realtor's commission from defendant.[1]

Defendant contends that there was no meeting of the minds because of the provision in the earnest money contract that "[s]eller has the right to refinance \* \* \*." The testimony was that the purpose of this provision was to allow the seller to place a mortgage on the property. The final printed contract on one of defendant's printed forms (as signed by the Mattson's, but not by defendant), also had a provision to the same effect.[2]

■ Defendant also contends the trial court could not properly find that 30 days after December 15, 1969 was a reasonable time for defendant to complete the closing of the transaction. Under the record in

---

[1] Defendant cites cases from other states in which it was held that no real estate commission was payable. We have read those cases and find that none of them involve facts substantially similar to the facts of this case.

[2] Defendant also says that some provisions of the printed form contract were "x'd out." What those provisions were, however, does not appear. Neither does it appear that this contract did not properly include all necessary provisions required by the earnest money contract.

this case, however, we hold that there was substantial competent evidence to support that finding, as well as the finding that Mattson was ready, willing and able to buy the property and that he fully performed what was required of him by the earnest money agreement.[9]

■ Defendant's final contention is to the effect that the trial court erred in finding that Mr. Mattson was willing to go through with the transaction because of the fact that on January 12, 1970 plaintiff, as his agent, wrote a letter to the escrow agent to keep the escrow open until July 1, 1970 and then on January 20, 1970 terminated the escrow and withdrew the money deposited in escrow by Mattson.

The testimony, however, was that during January defendant was trying to place a mortgage on the property (as permitted by the terms of the contract) and that plaintiff's letter of January 12, 1970 was no more than a proposal under which defendant's problem of placing of a mortgage on the property might be alleviated by withholding the recording of the signed contract of sale, although still closing the transaction as of December 15, 1969 so as to preserve to Mattson the tax advantage of prepaid interest during that year. There was no direct testimony as to why that proposal

---

[9] Defendant's president testified that defendant wanted to go through with the deal, but that Rask had no authority to act as agent for defendant and that he personally did not know of plaintiff's desire to close the transaction during 1969. Further, that he did not receive the documents from the escrow company in order that he might review them, and also did not receive the preliminary title report showing that the property was subject to an easement which prevented delivery of that title. On trial, however, defendant produced all of these documents and offered them in evidence, and it is not denied that Argus Realty, as defendant's agent, received such documents. Moreover, the trial court was not required to believe that testimony as the reason for defendant's failure to close the transaction.

was not accepted by defendant, but the evidence was such that the trial court could properly find that defendant did not do so, and that upon the expiration of 30 days as a reasonable time after December 15 for defendant to close the transaction, plaintiff, as agent for Mattson was entitled to terminate the escrow on January 20 and withdraw the funds on deposit.[2]

For these reasons we affirm the judgment of the trial court.

---

[2] Defendant denies that the offer set forth in plaintiff's letter of January 12, 1970 was ever communicated to it. If this is true, that letter did not excuse defendant of the duty to close the transaction within a reasonable time after December 15, 1969 which the trial court found to be a period of 30 days, expiring January 14, 1970. Similarly, if that offer was never communicated to defendant, plaintiff was free to withdraw it and to terminate the transaction upon expiration of the same 30-day period.